[No. 3108–3. Division Three. September 13, 1979.]

VALLEY VIEW CONVALESCENT HOME, *Appellant,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent.*

*R. G. Schimanski* and *Schimanski & Leeds,* for appellant.

*Slade Gorton, Attorney General,* and *Brian Coyle, Assistant,* for respondent.

MUNSON, J.—Valley View Convalescent Home[1] (Home) appeals a Superior Court judgment affirming revocation of its nursing home license and medicaid certification by the Department of Social and Health Services (Department). We reverse and dismiss because of the Department's failure to follow statutory procedure. RCW 34.04.130(6)(c).

In mid–December 1976, the Department, acting upon a complaint,[2] investigated the Home and found several violations of federal medicaid regulations. The Department con-

---

[1] Valley View Convalescent Home was the property of Dr. and Mrs. Maxwell F. Kepl. Dr. Kepl is deceased and his estate has been substituted as a party to this action.

[2] RCW 18.51.190—complaint of violation, request for inspection.
RCW 18.51.200—preliminary review of complaint, on–site inspection.

ducted a follow–up validation survey[3] on December 29 and 30, 1976. On February 1, 1977, the Department sent a letter giving the Home notice of its failure to meet federal criteria as a medicaid provider, advising that the local office had been notified there would be "no further admissions, read-missions or transfer of Medical Assistance patients or residents to your facility"; and advising that the Home had 10 days in which to request a fair hearing. Statements of the deficiencies found during the validation survey of December 29 and 30 were enclosed with the letter.

On February 3, 1977, the Home requested a hearing, asked for consultation services, and requested another survey.

On February 23, 1977, the Department sent a second letter notifying the Home that it was in violation of the Washington state nursing home licensing act and its attendant rules and regulations, citing specifically 40 state licensing standard violations (WAC 248–14 and 248–84); also attached was a statement of deficiencies. This letter further notified the Home that the Department considered this to be formal notice of license revocation which would be final in 20 days unless within that time the Home requested an administrative hearing. Such a hearing was

---

[3]"Survey" in the Department's lexicon is what legislatively is called an "inspection"; a "validation survey" is a more in–depth inspection similar to an annual inspection. RCW 18.51.090 requires "at least a yearly inspection and investigation of all nursing homes." This provision was repealed by the Laws of 1975, 1st Ex. Sess., ch. 99, § 17, p. 421, but was ostensibly amended during the same session, *i.e.,* Laws of 1975, 1st Ex. Sess., ch. 213, § 2, p. 705. It would appear the legislature erroneously repealed the section in chapter 99 because the language of this statute comports with the legislative intent of a system of inspections and reporting and a system of prompt and effective sanctions for violation of regulations contained in RCW 18.51.007. *See Cory v. Nethery,* 19 Wn.2d 326, 331, 142 P.2d 488 (1943); Annot., *Effect of simultaneous repeal and re–enactment of all, or part, of legislative act,* 77 A.L.R.2d 336 (1961).

RCW 18.51.230 also requires at least one general inspection, without advance notice, annually.

requested. The parties stipulated that the alleged deficiencies leading to both the decertification and license revocation could be combined in a single hearing.

The Home requested, and the Department provided, consultation services on three occasions. The Home also requested a third survey which the Department performed April 4–6, 1977; the results evidenced many of the same violations as those cited in the December survey. The Department declined to reconsider its decertification and revocation of license actions. The administrative hearing took place over a period of 7 days from April 15 to May 24, 1977, resulting in a transcribed record of 1,171 pages and 144 exhibits. A final administrative decision containing findings of fact and conclusions of law, resulting in revocation of the medicaid certification and the nursing home license, was entered August 31, 1977. On appeal, the Superior Court reviewed the entire record, heard arguments and affirmed the Department's decision. The Home appeals.

The Home first contends that its constitutional rights to due process of law have been violated by the Department's failure to follow statutory procedure. We do not reach the constitutional issue, but we do find a violation of statutory procedures[4] necessitating dismissal of these proceedings.[5]

---

[4]The Department has not contended in this proceeding that this termination was pursuant to the Department's contract with the Home; hence, we do not consider the validity of the termination and/or severability clauses of that contract.

[5]The pertinent statutory provisions are as follows:

RCW 18.51.007—legislative intent, sanctions and reasonable amount of time to comply:

It is the intent of the legislature in enacting this 1975 amendatory act to establish (1) a system for the imposition of prompt and effective sanctions against nursing homes in violation of the laws and regulations of this state relating to patient care; (2) an inspection and reporting system to insure that nursing homes are in compliance with state statutes and regulations pertaining to patient care; and (3) a provisional licensing mechanism to insure that full term licenses are issued only to those nursing homes that meet state standards relating to patient care: *Provided,* That *no sanction shall be imposed* by the department *until the department has informed the owner* and administrator of the nursing home *about the rules and regulations required to be followed to avoid penalties and until the department has granted a reasonable*

 RCW 18.51.070 and RCW 34.04.020 give the Department authority to adopt, amend and promulgate rules, regulations and standards applicable to all nursing

---

*amount of time to the owner and administrator of the nursing home to correct the condition which would result in the penalty.*
(Italics ours.)
RCW 18.51.060—authorization of departmental action against a license:

The department is authorized *to deny, suspend, or revoke* a license or provisional license *or, in lieu* thereof or in addition thereto, *assess monetary penalties* of a civil nature not to exceed five hundred dollars per violation in any case in which it finds that the . . . licensee, . . .:

(1) Failed or refused to comply with the requirements of this chapter or the standards, rules and regulations established hereunder; . . .
(Italics ours.)
RCW 18.51.065—Time for licensee to request hearing. Procedures in accordance with RCW 34.04:

All orders of the department denying, suspending, or revoking the license or provisional license, and/or assessing a monetary penalty shall become final twenty days after the same has been served upon the . . . licensee unless a hearing is requested. All hearings hereunder and judicial review of such determination shall be in accordance with the administrative procedure act, chapter 34.04 RCW.
RCW 34.04.130(6):

(6) The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(f) arbitrary or capricious.
RCW 34.04.170(2)—Notice and reasonable opportunity to comply:

(2) *No revocation,* suspension, annulment, modification, or withdrawal of any license *is lawful unless, prior to the institution of agency proceedings, the agency gave notice* by mail *to the licensee* of facts or conduct which warrant the intended action, *and the licensee was given reasonable opportunity to show compliance* with all lawful requirements for the retention of the license. If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined.
(Italics ours.)

homes pursuant to RCW 18.51. These statutes must be considered in pari materia in order to determine legislative intent. *See Silvernail v. County of Pierce,* 80 Wn.2d 173, 492 P.2d 1024 (1972); *State v. Munson,* 23 Wn. App. 522, 526, 597 P.2d 440 (1979). The proviso of RCW 18.51.007 expressly requires the Department to grant the Home a reasonable time to correct cited deficiencies which could result in the sanctions authorized in RCW 18.51.060, *i.e.,* denial, suspension, revocation or a monetary penalty. Similarly, RCW 34.04.170(2) requires that "prior to the institution of agency proceedings," the Department grant the Home reasonable opportunity to show compliance before effecting a lawful revocation. "Where the language of a statute is clear, we will respect it." *Griffin v. Department of Social & Health Servs.,* 91 Wn.2d 616, 624, 590 P.2d 816 (1979).

Here, the notices of decertification and of revocation accompanied the Department's statements of deficiencies. Both notices imposed revocation with no time period for correction.

■ Although we have found no case, nor has any been cited, interpreting RCW 34.04.170(2), a comparable provision in the Federal Administrative Procedures Act has been interpreted. 5 U.S.C. § 551 (1977) *et seq.,* and specifically section 558(c).[6] The federal proviso relating to notice and an opportunity to show compliance has been referred to as

---

[6]5 U.S.C. § 558(c) (1977) states in part:

(c) . . . Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given—

(1) notice by the agency in writing of the facts or conduct which may warrant the action; and

(2) *opportunity to demonstrate or achieve compliance with all lawful requirements.*

When the licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency.

(Italics ours.)

a "second chance" doctrine, *George Steinberg & Son, Inc. v. Butz,* 491 F.2d 988, 993 (2d Cir.), *cert denied,* 419 U.S. 830 (1974), or the "one–bite" doctrine, *H.P. Lambert Co. v. Secretary of the Treasury,* 354 F.2d 819, 821 n.2 (1st Cir. 1965). A literal reading of both federal and state provisos evidences a legislative intent to require an agency contemplating revoking a license to notify and then give the licensee an opportunity to put his "house in lawful order before more formal agency proceedings are undertaken." *Blackwell College of Business v. Attorney General,* 454 F.2d 928, 934 (D.C. Cir. 1971). *See also New York Pathological & X–Ray Laboratories, Inc. v. Immigration & Naturalization Serv.,* 523 F.2d 79 (2d Cir. 1975).

The Department argues that no sanction was imposed prior to giving the Home an opportunity to correct its deficiencies and comply with the regulations, *i.e.,* the Home was granted a 2–month period between the February notices of revocation and the administrative hearing held from April to May. Hence, there was no violation of due process prior to the filing of the final administrative decision. *See Yakima County Clean Air Authority v. Glascam Builders, Inc.,* 85 Wn.2d 255, 534 P.2d 33 (1975); *Barry & Barry, Inc. v. Department of Motor Vehicles,* 81 Wn.2d 155, 500 P.2d 540 (1972), *appeal dismissed,* 410 U.S. 977, 36 L. Ed. 2d 173, 93 S. Ct. 1503 (1973). We disagree. Neither RCW 18.51.007 nor RCW 34.04.170(2) permits the Department to revoke either the Home's license or its medicaid certification without giving the Home the opportunity to correct deficiencies or to show compliance. Nothing in the extensive record made at the administrative proceeding shows any attempt by the Department during the time interval to which they refer that this Home was accorded these statutory opportunities. True, Department

There are two distinctions between RCW 34.04.170(2) and 5 U.S.C. § 558(c) (1977). First, our statute does not have an exception for willful violation. Second, the proviso relating to public health, safety and welfare provides a different procedure in RCW 34.04 than in 5 U.S.C. § 558(c) (1977).

consultants provided their services, as well as a subsequent survey, but these were done after the Department instituted proceedings for revocation and decertification subject to the Home's right to an administrative hearing. It is impossible to correct deficiencies unless a licensee has knowledge of them.

Furthermore, the Department's statement of deficiencies forms themselves indicate permitting a licensee the opportunity to show compliance. The social security form states:

> This document contains a listing of the deficiencies cited by the surveying State Agency as requiring correction. . . . In the column Provider's Plan of Correction, *the statement should reflect the facility plan for corrective action and anticipated time for correction.*

(Italics ours.) The pages of these forms are divided in half vertically. The left–hand column is captioned "Summary Statement of Deficiencies" and the right–hand column is captioned "Provider's Plan of Correction with Time Table." The Department forms provide a place for the initials of both the Department agent and the nursing home administrator.

On the forms introduced in this record, however, the entire page is typewritten from left to right with statements of deficiencies and citations to the regulations violated. No space is provided for the Home's plan or timetable of correction. By contrast, a copy of a 1975 annual survey of this Home does have in the left–hand column a statement of the deficiencies with the regulation cited and in the right–hand column in the handwriting ostensibly of the administrator of this Home a plan and timetable of correction. Thus, it is evident that the Department understands the necessity of providing an opportunity to show compliance and, in this instance, chose not to do so.

The Department correctly contends that it is bound by the federal statutes and the rules and regulations promulgated thereunder when the Department accepts federal funds for medical assistance. *See* 42 U.S.C. § 1396(a) (1974); *cf.* 42 C.F.R. § 449.33 (1978) (formerly 45 C.F.R. §

249.33, redesignated in 42 Fed. Reg. 52,827 (Sept. 30, 1977)). However, the Department cites no statute nor regulation governing the procedure for decertification. The Department is required to enforce federal regulations relating to medicaid, *Doe v. Beal*, 523 F.2d 611 (3d Cir. 1975), *rev'd on other grounds*, 432 U.S. 438, 53 L. Ed. 2d 464, 97 S. Ct. 2366 (1977); *Gould v. Klein*, 150 N.J. Super. 519, 376 A.2d 196 (1977), but the procedure for decertification is left to the states. As we have already stated, those procedures are governed by RCW 18.51 and RCW 34.04 and the rules promulgated by the Department found in WAC 248.14.[7]

■ The Department must act within the prescribed boundaries as set by the legislature. *Wheaton v. Department of Labor & Indus.*, 40 Wn.2d 56, 58, 240 P.2d 567 (1952); *cf. Griffin v. Department of Social & Health Servs.*, 91 Wn.2d 616, 625 n.1, 590 P.2d 816 (1979). We conclude that the Department has not followed the directives and intent of the legislature. By not granting the licensee a reasonable amount of time to comply, the procedure the Department invoked was thus unlawful, RCW 34.04-.130(6)(c), and the proceeding must be dismissed.[8]

The Home's other assignments of error may be decided summarily. The Home contends that there was a violation of the appearance of fairness doctrine because the hearing examiner was an employee of the Department and that these proceedings from the initial investigation through the prosecution, decision making and imposition of penalty

---

[7]We note the Department has not promulgated any regulations to implement the emergency health provision of RCW 34.04.170(2), nor does either notice in this case evidence such emergency as that term is used in the statute. There was no summary suspension of the license pending revocation proceedings. True, the Home was put on notice that no additional medicaid patients would be transferred into the institution, but those medicaid patients already in the Home remained there and medicaid payments continued throughout these proceedings for their care. The Department, not having implemented these proceedings under the emergency provision of the statute, cannot now invoke it, and thus eliminate the statutory requirement for opportunity to comply.

[8]The time for compliance discussed in this opinion appears to have been clarified by the Laws of 1979, 1st Ex. Sess., ch. 211, § 60(2), p. 1850.

were done by departmental employees. We disagree. There is no showing of any actual conflict of interest nor that the hearing examiner failed to remain objective, impartial and free of any entangling influence in both fact and appearance. We find no error. *Chicago, M., St. P. & P. R.R. v. State Human Rights Comm'n*, 87 Wn.2d 802, 557 P.2d 307 (1976); *King County Water Dist. 54 v. King County Boundary Review Bd.*, 87 Wn.2d 536, 554 P.2d 1060 (1976).

 The Home next contends that the appearance of fairness doctrine is violated because the director's designee who signed the final administrative decision had neither heard the testimony nor read the record. (The transcript of the administrative proceeding was subsequently prepared after an administrative decision, pursuant to WAC 248–08–730.) So long as officials of the agency who render the final decision afford an opportunity to the party adversely affected by a proposed decision to file exceptions and present written argument to those officials, RCW 34.04.110, the procedure is proper. *Bowing v. Board of Trustees*, 85 Wn.2d 300, 534 P.2d 1365 (1975); *see Yakima County Clean Air Authority v. Glascam Builders, Inc., supra; Rody v. Hollis*, 81 Wn.2d 88, 500 P.2d 97 (1972). As noted in *Bowing v. Board of Trustees, supra* at 308, citing 2 F. Cooper, *State Administrative Law*, ch. 13, § 3, at 445 (1965):

> It has probably never been the law that he who decides must hear. If ever it was, it is no more. This time–honored rubric has now become no more than a nostalgic slogan.

There was no error.[9]

The Home contends that the administrative decision contains one erroneous conclusional finding of fact. Our

---

[9]There is an apparent anomalous situation when to provide a proper judicial review of an administrative decision a superior court judge and a Court of Appeals judge must read a record consisting of 15 volumes of transcribed testimony, exhibits, decisions and exceptions, in addition to the clerk's papers, but the administrative trier of fact and decision maker is neither required to read the record nor hear the testimony.

review of this record satisfies us that the assignment of error is without merit.

The Home next contends that the Superior Court erred in not admitting additional testimony at its proceeding which might evidence the Home's compliance. RCW 34.04-.130(5) compels judicial review of an administrative decision be confined to the record unless there are allegations of irregularities in the procedure before the agency. No meritorious allegations of irregular procedures were raised.

Lastly, the Home contends the selection of the proper sanction was arbitrary and capricious. We need not consider this assignment in view of the result reached; *but see Rody v. Hollis, supra* at 93.

Judgment is reversed and the proceedings are dismissed.

GREEN, C.J., and McINTURFF, J., concur.

Reconsideration denied October 10, 1979.

Review denied by Supreme Court January 11, 1980.