[No. 4805-5-III. Division Three. February 10, 1983.]

ESTATE OF MAXWELL F. KEPL, *Appellant*, v. THE STATE OF WASHINGTON, ET AL, *Respondents*.

6

*Charles T. Conrad* and *Schimanski & Leeds,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *David E. Walsh, Assistant Chief Deputy,* for respondents.

McINTURFF, J.—Helen Kepl, individually and as administratrix of her deceased husband's estate, appeals from an order[1] which dismissed her civil rights action against certain state employees. We affirm.

The Kepls were the owners of the Valley View Convalescent Home (hereinafter the Home), a duly licensed Spokane Valley nursing home. They were also parties to a contract with the Department of Social and Health Services (hereinafter the Department) to provide nursing home care to the Department's medical assistance recipients. The

---

[1] The order contained an express determination, pursuant to CR 54(b), that there was no just reason for delay and also contained an express direction for entry of the judgment. Therefore, the order is appealable under RAP 2.2(d). We found this determination was entered in compliance with *Doerflinger v. New York Life Ins. Co.,* 88 Wn.2d 878, 567 P.2d 230 (1977).

contract provided, *inter alia,* that the Home would comply with applicable licensing and Medicaid certification standards and that failure to comply would constitute grounds for termination of the contract by the Department. The original term of the contract was through September 30, 1976, and was extended by written modification to September 30, 1977.

In December 1976, investigations of the Home revealed violations of federal Medicaid regulations and state nursing home licensing statutes and regulations. As a result, James Blakeley, acting chief of the Department's Bureau of Nursing Home Affairs, sent a letter dated February 1, 1977, to the Kepls notifying them of the Home's alleged failure to meet federal criteria as a Medicaid provider and further advising them that the local office would not be placing any additional patients with the Home, pending a hearing. On February 23, 1977, Dr. John Beare, the director of the Department's health services division, notified the Kepls by letter that the Home's license would be revoked within 20 days unless within that time the Home requested an administrative hearing. Michael Jessup, the third individual defendant named by the Kepls, is the zone manager for the eastern survey zone for the Department's Bureau of Nursing Home Affairs. He directed the investigations of the Home which revealed the alleged violations.

The Kepls requested a hearing on the matters alleged in both of the foregoing letters. On August 31, 1977, the hearing officer entered a final administrative decision revoking the Home's Medicaid certificate and its state license. The Superior Court affirmed that decision.

In *Valley View Convalescent Home v. Department of Social & Health Servs.,* 24 Wn. App. 192, 599 P.2d 1313 (1979), this court reversed the administrative decision. The court based its ruling on the Department's failure to follow procedures contained in RCW 18.51.007[2] and RCW 34.04-

---

[2]RCW 18.51.007 stated, *inter alia:*

[N]o sanction shall be imposed by the department until the department has

.170(2).[3] Both statutes required the agency to give the licensee a reasonable time to show compliance with the applicable rules and regulations before imposing sanctions or instituting agency proceedings. The court reasoned that the Department has authority to act only within the prescribed boundaries set by the Legislature; that in this instance the Department had not granted the Home a reasonable amount of time to comply; and, thus, the procedure used by the Department was unlawful and its results must be overturned. *Valley View,* at 200.

In the meantime, Dr. Kepl had died. On April 25, 1980, Mrs. Kepl brought this action against the State for damages caused by the unlawful revocation of the Home's license and certificate and the loss of its contract with the Department. Subsequently, an amended complaint was filed adding the individual defendants, alleging their conduct constituted a violation of 42 U.S.C. § 1983.

Mrs. Kepl moved for summary judgment on the issue of liability. The trial court denied the motion on the section 1983 and contract causes of action. However, the court did find that the State was liable as a matter of law in tort for damages arising from its failure to comply with the provisions of the statutes noted by the Court of Appeals.

The State then moved for dismissal of the section 1983 and contract causes of action. By the same motion, it asked the court to reconsider that portion of its earlier order

---

informed the owner and administrator of the nursing home about the rules and regulations required to be followed to avoid penalties and *until the department has granted a reasonable amount of time to the owner and administrator of the nursing home to correct the condition which would result in the penalty.*

(Italics ours.) The Legislature has since amended this statute to eliminate the quoted language. (Laws of 1981, 1st Ex. Sess., ch. 2, § 14.)

[3]RCW 34.04.170(2) provided:

No revocation . . . of any license is lawful unless, prior to the institution of agency proceedings . . . the licensee was given reasonable opportunity to show compliance with all lawful requirements for the retention of the license.

This statute has also been amended to delete the cited language. (Laws of 1980, ch. 33, § 1.)

holding the State liable in tort. In the alternative, the State asked for summary judgment on the issue of proximate causation.

The trial court granted the State's motion to dismiss on the ground that as to the causes of action for violation of section 1983 and breach of contract, the plaintiffs had not stated a claim upon which relief could be granted. By the same order, the court held that the State's failure to follow the statutes was the proximate cause of only those damages resulting from the Department's February 1, 1977, decision not to place additional Medicaid patients in the Home pending a hearing. The court limited such damages to lost profits for a 3–month time period.

Mrs. Kepl contends the facts alleged in her complaint establish a claim under 42 U.S.C. § 1983,[4] which provides:

> Every person who, under color of any statute, . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .

The initial inquiry focuses on whether two essential elements are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether the conduct deprived a person of rights, privileges, or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 536–37, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981).

Here, we are concerned with the second element, *i.e.*, whether the acts complained of interfered with a constitutional or federal statutory right of the Kepls. Specifically, the complaint alleges a lack of due process in the delicensure and decertification proceedings. The question presented is whether the individual defendants, by not allowing time for compliance as provided by the statutes,

---

[4]Mrs. Kepl cites the court to numerous cases which address the scope of the qualified immunity available to executive officers for acts performed in the course of their official conduct. Our disposition of the case does not require us to determine whether a qualified immunity existed here.

deprived the Kepls of property without due process of law.

In *Parratt v. Taylor, supra,* the United States Supreme Court held that the negligent loss of a prisoner's property by state employees did not amount to a deprivation without due process. There, a prisoner's "hobby kit" was lost because prison officials did not follow proper procedures in handling incoming mail. Since the property loss resulted from an unauthorized act by a state employee, the Court reasoned the State could not realistically provide a hearing *prior* to the loss. However, a subsequent hearing was available to the prisoner under the State's tort claims procedure. The Court held this procedure adequately protected the prisoner's due process interests. Consequently, the prisoner's section 1983 claim was dismissed.

*Parratt* distinguished "'between a challenge to an established state procedure as lacking in due process and a property damage claim arising out of the misconduct of state officers.'" *Parratt,* at 542 (quoting from *Bonner v. Coughlin,* 517 F.2d 1311, 1319 (7th Cir. 1975), *modified en banc,* 545 F.2d 565 (1976), *cert. denied,* 435 U.S. 932 (1978)). In the former situation, the facts fall squarely within the Fourteenth Amendment's prohibition against "state" deprivations of property. In the latter, the state action is not necessarily complete. Where the State provides some meaningful opportunity for a determination of rights and liabilities, the requirements of due process are satisfied.

Mrs. Kepl argues that *Parratt's* application should be limited to facts involving a *negligent* deprivation of property. Her complaint alleges the defendants acted intentionally.[5] The federal courts are in disagreement as to whether *Parratt's* analysis extends to intentional as well as negli-

---

[5]Paragraph 8 of the amended complaint reads:

"MICHAEL JESSUP, JAMES BLAKELEY, and DR. JOHN A. BEEARE [*sic*] acting under color of law intentionally, recklessly, willfully and wantonly caused the unlawful delicensure of plaintiff as a nursing home and decertification of plaintiff as a Medicaid health care provider."

gent deprivations of protected interests.[6]

Mrs. Kepl's argument ignores the determinative facts of *Parratt*. Although *Parratt* did involve a negligent deprivation of property, the fact of negligence was not the one which the Court relied on in reaching its decision. Rather, the Court emphasized that "the deprivation did not occur as a result of some established state procedure." *Parratt,* 451 U.S. at 543. Consequently, the State could not predict the loss and provide a hearing before the deprivation took place. *Parratt,* 451 U.S. at 542.

The facts of the present case are similar to *Parratt*. Mrs. Kepl does not challenge the established State procedures for delicensure and decertification. Her complaint is directed to the failure of the Department's employees to follow those procedures. We therefore conclude that *Parratt*'s rationale applies. That is, since the State of Washington provides Mrs. Kepl with an adequate remedy under its tort claims procedure, RCW 4.92.010 *et seq.*,[7] no deprivation of property without due process occurred.

Moreover, the trial court's decision to dismiss the section 1983 claim is sustainable on an additional ground. Once there has been an initial showing of the absence of any genuine issue of material fact, the party opposing the summary judgment motion must respond with more than conclusory allegations, speculative statements, or argumentative assertions of the existence of unresolved factual

---

[6]*See Ellis v. Hamilton,* 669 F.2d 510 (7th Cir. 1982); *Rutledge v. Arizona Bd. of Regents,* 660 F.2d 1345 (9th Cir. 1981); *Eberle v. Baumfalk,* 524 F. Supp. 515 (N.D. Ill. 1981); *Sheppard v. Moore,* 514 F. Supp. 1372 (M.D.N.C. 1981); *Meshkov v. Abington Township,* 517 F. Supp. 1280 (E.D. Pa. 1981) (all of which applied *Parratt*); and *Wakinekona v. Olim,* 664 F.2d 708 (9th Cir. 1981); *Pantoja v. Gonzales,* 538 F. Supp. 335 (N.D. Cal. 1982); *Howse v. DeBerry Correctional Inst.,* 537 F. Supp. 1177 (M.D. Tenn. 1982); *Peters v. Hopewell,* 534 F. Supp. 1324 (D.N.J. 1982); *Tarkowski v. Hoogasian,* 532 F. Supp. 791 (N.D. Ill. 1982); and *Parker v. Rockefeller,* 521 F. Supp. 1013 (N.D.W. Va. 1981) (all of which distinguished *Parratt*).

[7]RCW 4.92.010 provides in part:

"Any person or corporation having any claim against the state of Washington shall have a right of action against the state in the superior court."

issues. *LaPlante v. State,* 85 Wn.2d 154, 531 P.2d 299 (1975); *Turngren v. King Cy.,* 33 Wn. App. 78, 84, 649 P.2d 153 (1982). Mrs. Kepl did not meet this latter burden.

Here, the State referred the trial court to the affidavits of the three individual defendants in support of its motion to dismiss the section 1983 claim. All three affiants viewed the situation at the nursing home as an emergency requiring immediate action.[8] Mr. Blakeley stated:

As a consequence of an on–site review, my staff recommended that the office had the obligation to take steps to decertify and delicense the Home as soon as possible. It was indicated to me that there were numerous conditions existing at the Home which posed an immediate and serious threat to patient health and safety.

Mr. Jessup's affidavit supported Mr. Blakeley's assertions. He said:

As a result of the second survey, it was clear that the conditions cited jeopardized the health and safety of the patients. I recommended that appropriate steps be taken to revoke the nursing home license and the certification as a medicaid provider.

Similarly, Dr. Beare attested:

I understood that the conditions at the Home jeopardized the health and safety of the patients. . . . I believed that the office could take revocation action immediately in an emergency type situation such as this.

In response, Mrs. Kepl relied on the following language contained in the opinion deciding the first appeal:

The [Department's] forms are divided in half vertically. The left–hand column is captioned "Summary Statement

---

[8]RCW 34.04.170(2), quoted in part in footnote 3, also provided:

If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action.

The individual defendants' affidavits indicate that the Home's deficiencies, in the Department's view, threatened the health, safety and welfare of its patients. However, the agency's order apparently did not include a specific finding in this regard. If the Department's officials had followed the above quoted provision, they would have avoided the numerous legal problems which ensued.

of Deficiencies" and the right–hand column is captioned "Provider's Plan of Correction with Time Table." . . .

On the forms introduced in this record, however, the entire page is typewritten from left to right with statements of deficiencies . . . No space is provided for the Home's plan or timetable of correction. . . . Thus, it is evident that the Department understands the necessity of providing an opportunity to show compliance and, in this instance, chose not to do so.

*Valley View,* at 199. In her view, this language indicates that the defendants knowingly chose to disregard the mandates of the statutes.

■ We agree with the trial judge that Mrs. Kepl's reliance on the prior Court of Appeals decision is misplaced. The individual defendants were not parties to the prior action and the result of that case does not imply an intentional abuse of power. Since Mrs. Kepl did not file any opposing affidavits, we are left with the assertions in the State's affidavits which indicate the failure to follow the statutes was not intentional. Thus, the conduct falls squarely within *Parratt,* even under Mrs. Kepl's interpretation of the same.

We conclude the trial court properly dismissed the Kepls' section 1983 action for failure to state a claim.

The order of the Superior Court dismissing the section 1983 cause of action is affirmed.

Pursuant to RCW 2.06.040, the remaining contentions and the court's answers to those contentions, having no precedential value, will not be published.

ROE, C.J., and GREEN, J., concur.