Felton JOSHUA, Sr.; and Debra M.
Joshua, Plaintiffs–Appellants,

v.

Sally N. NEWELL, Foster Home Li-
censor, Department of Social and
Health Services; and John Doe Newell,
wife and husband, et al., Defendants–
Appellees.

No. 87–4239.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 16, 1988.

Decided April 3, 1989.

Felton Joshua, Sr., Olympia, Wash., pro
se.

Richard A. McCartan, Asst. Atty. Gen.,
Olympia, Wash., for defendants-appellees.

Before GOODWIN, Chief Judge, and
WRIGHT and WALLACE, Circuit
Judges.

WALLACE, Circuit Judge:

Felton Joshua, Sr. and Debra M. Joshua
(the Joshuas) appeal from the district
court's entry of summary judgment in fa-
vor of Sally Newell and other officials of
the Washington State Department of Social
& Health Services (Department).  The
Joshuas' claim under 42 U.S.C. § 1983 al-
leged that their due process rights were
infringed by the Department's suspension
of their foster care license.  The district
court had jurisdiction under 28 U.S.C.
§§ 1331 and 1343(a)(3) & (4).  We have
jurisdiction over the Joshuas' timely appeal
pursuant to 28 U.S.C. § 1291.  We affirm.

I

The Joshuas were licensed for foster
home care on March 5, 1982, by the Depart-
ment pursuant to Wash.Rev.Code Ann. ch.
74.15 (1982 & Supp.1989).  A thirteen-year-
old girl who lived in the Joshua home from
March 5 through August 13, 1982, alleged
that Mr. Joshua had raped her.  After she
left the Joshuas' care, criminal charges of
second and third degree statutory rape
were filed against Mr. Joshua.  Mr. Joshua
was tried by a jury on October 17 and 18,
1983, but the jury deadlocked and a mis-
trial was declared.  A second trial was held
on December 10, 1983, and he was acquit-
ted.

After learning of the charges, Newell, a
foster home licensor for the Department,

visited the Joshua home. An agreement was reached, but its extent is disputed. The record is clear, however, that pending the criminal investigation, the Joshuas would accept no more children, and the Department would send no more. Shortly after this visit, Newell sent the Joshuas a letter dated December 3, 1982, explicitly stating that because of the foster child's allegations, "the Foster Care License is in suspension." The letter further states that "[u]pon completion of the law enforcement investigation a decision will be made as to the status of the license. Your cooperation with voluntary discontinuance of foster care is appreciated." Despite the clear language of this brief letter, the Joshuas assert that their understanding was that although children would not be placed in the home, their license would not be suspended.

On January 4, 1984, after Mr. Joshua's acquittal, the Joshuas sent the Department a letter requesting "a hearing ... regarding suspension of foster home license" under Wash.Rev.Code Ann. § 74.15.130 (Supp.1989). A hearing was scheduled for February 10, 1984. On February 7, 1984, the Department sent the Joshuas a notice of intent to revoke their foster care license. Pursuant to section 74.15.130, the letter gave notice of the Joshuas' right to request an administrative hearing within 30 days of receiving the revocation notice. The Department offered to use the scheduled February 10 hearing for that purpose.

At the February 10 hearing, the Department moved to dismiss the Joshuas' hearing request as untimely under section 74.15.130, because more than 30 days had elapsed from the date of Newell's December 3, 1982, suspension letter until the date the Joshuas' appeal was filed. This motion was denied because the letter gave no notice of the Joshuas' appeal rights. At the reconvened hearing on May 4, 1984, the Joshuas stated that they did not wish to have a hearing on the merits, and wished to contest only whether Newell's December 3, 1982, letter was procedurally correct.

The administrative law judge determined that the Department's notice of suspension had not been procedurally correct. The judge ruled that the letter failed to meet the procedural requirements of a notice of intent to suspend under Wash.Rev.Code Ann. § 74.15.130 (Supp.1989). The letter failed to notify the Joshuas of their right to request a hearing within 30 days before the suspension could take effect. The judge also ruled that the letter appeared to have the effect of an order of summary suspension under Wash.Rev.Code Ann. § 34.04.170(2) (Supp.1989). Summary suspension of licenses is permitted under Washington law where justified by "public health, safety, or welfare," but an order of suspension must include findings to that effect, and proceedings for revocation or other action must be instituted and resolved promptly. Wash.Rev.Code Ann. § 34.04.170(2) (Supp.1989) (recodified at Wash.Rev.Code Ann. § 34.05.422(4), effective July 1, 1989). These procedures were not followed.

This deficiency had no effect, however, on the proceedings initiated by the Department's February 7, 1984, notice of intent to revoke the Joshuas' license. The letter was received on February 8. The letter notified the Joshuas that if they did not use their already scheduled hearing to contest the revocation, failure to request a hearing to contest the revocation within 30 days of receiving the letter would result in final revocation of their license. At no time within the 30 days (or thereafter) did the Joshuas request such a hearing. As a result, the Department, in a letter dated March 14, 1984, revoked the Joshuas' license.

On December 3, 1985, the Joshuas filed a claim under 42 U.S.C. § 1983 against Newell and other officials of the Department. The complaint alleged that the Joshuas had a property interest in their foster home license, and that suspension of their license without an opportunity to be heard violated the Joshuas' due process rights. The Joshuas sought $6.5 million in damages, plus court costs. On June 4, 1987, the Joshuas filed a notice of claim with the State of Washington, pursuant to Wash.Rev.Code Ann. §§ 4.92.100 and 4.92.110 (1988).

Newell and the other defendants moved for summary judgment, which the court granted. The court subsequently denied the Joshuas' motion to amend the judgment. This appeal followed.

## II

We review the entry of summary judgment independently. *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir.1989) (en banc) (*United Steelworkers*). We apply the same standard used by the district court under Fed.R.Civ.P. 56(c). *Id.* Under that standard, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We review the evidence in the light most favorable to the Joshuas. *United Steelworkers*, 865 F.2d at 1543.

Newell argues that the Joshuas' claim is barred by the statute of limitations. In "considering § 1983 claims [we] should borrow the general or residual statute for personal injury actions." *Owens v. Okure*, — U.S. —, 109 S.Ct. 573, 582, 102 L.Ed. 2d 594 (1989) (footnote omitted). In Washington, that would be three years. Wash. Rev.Code Ann. § 4.16.080(2) (1988); *see Rose v. Rinaldi*, 654 F.2d 546, 547 (9th Cir.1981). The Joshuas' section 1983 action is based on the letter dated December 3, 1982, and received at some subsequent date, suspending their foster home license without notifying them of their right to appeal the suspension. The Joshuas filed their complaint on December 3, 1985, within the limitations period.

■ Newell argues for a different bar to this action. She points to the Washington notice of claim statute, Wash.Rev.Code Ann. § 4.92.110 (1988), which requires tort plaintiffs suing state defendants to file their claim with the state before commencing any action. The Joshuas did not provide such notice until June 4, 1987, well past the expiration of the limitations period.

The Supreme Court recently addressed this issue. In *Felder v. Casey*, — U.S.

—, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (*Felder*), the Court held that Wisconsin's notice of claim statute would not apply to section 1983 actions brought in either federal or state court. *Id.* at 2307–08. We hold that the Washington notice of claims statute does not apply to section 1983 claims brought in federal court. *Felder* held that while Congress intended to import state statutes of limitations into the federal civil rights scheme, it did not intend to import state notice of claim provisions. *Id.* Therefore, state notice of claim provisions are inapplicable to section 1983 actions brought in federal court. *Id.*

## III

■ Our initial inquiry in a section 1983 claim focuses on two elements: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed. 2d 420 (1981) (*Parratt*). It is undisputed that the conduct complained of here was performed under color of state law.

The Joshuas allege they were deprived of property without due process of law as a result of the flawed proceeding suspending their license. We assume without deciding that the Joshuas had a protected property interest in their license. The due process clause protects the Joshuas from deprivation of such property without due process of law. *Id.* at 536–37, 101 S.Ct. at 1913–14.

Nonetheless, under *Parratt* the Joshuas have not alleged a violation of the due process clause of the fourteenth amendment. Whatever deprivation the Joshuas suffered did not occur as a result of some established state procedure. *See id.* at 543, 101 S.Ct. at 1917. The Joshuas complain that the letter suspending their license failed to notify them of their hearing rights and thus failed to comply with state procedures. There is no complaint that the state's suspension procedure itself was inadequate. This point is crucial to our analysis. The foundation of this claim is the Department's alleged noncompliance

with state procedure. Any deprivation the Joshuas suffered thus resulted from "the unauthorized failure of agents of the State to follow established state procedure." *Id.*

Obviously, in this situation it was impracticable and indeed impossible for the state to provide a predeprivation hearing. *See id.* Once the license suspension letter failed to notify the Joshuas of their hearing rights, the alleged deprivation had already occurred. What the Joshuas contest is not the suspension, but the lack of notice; state procedures already existed to protect the Joshuas from this lack of notice. In these circumstances, we cannot imagine how any predeprivation hearing or other predeprivation remedy was possible.

*Parratt* teaches that where an alleged deprivation results from "the unauthorized failure of agents of the State to follow established state procedure," and where no predeprivation hearing is practicable, we should examine whether the state provides an adequate post-deprivation remedy. *Id.* We conclude that it does. Like the State of Nebraska in *Parratt, id.* at 543–44, 101 S.Ct. at 1916–17, the State of Washington provides the opportunity to bring tort claims against the State. Wash.Rev.Code Ann. ch. 4.92 (1988); *Estate of Kepl v. State,* 34 Wash.App. 5, 10–11, 659 P.2d 1108, 1112 (1983) *(Kepl).* To satisfy due process, the state remedy need not provide the Joshuas with all the relief available under section 1983, so long as it would fully compensate their property loss. *Parratt,* 451 U.S. at 543–44, 101 S.Ct. at 1916–17. We believe that the post-deprivation tort remedy afforded by the State of Washington meets this test. *See Kepl,* 34 Wash. App. at 11, 659 P.2d at 1112.

Indeed, we question whether the Joshuas suffered *any* deprivation under color of state law. Had the Joshuas received proper notice, they would have learned that they had a limited period to exercise their hearing and appeal rights before losing them. Deprived of such notice, they were technically unable to request a hearing after 30 days passed, and their license was effectively suspended. But the Joshuas ac-

knowledge that they voluntarily agreed that no more children would be placed in their home pending investigation of the charges against Mr. Joshua, although they deny agreeing with Newell that their license should be suspended. Any deprivation of property suffered during the period before Mr. Joshua's acquittal was caused by this voluntary agreement, not by the state.

Following Mr. Joshua's acquittal, when the Joshuas requested a hearing, the state administrative law court ruled that because the Joshuas had not been notified of their hearing rights, they could pursue their appeal on the merits. Thus, the very procedural default of which they complain was corrected through state procedures. The Joshuas chose not to pursue their claim on the merits: they chose not to contest the state's final revocation of their license. Under these circumstances, whatever deprivation they suffered was inflicted by themselves, not by a state official acting under color of state law.

Viewing the evidence in the light most favorable to the Joshuas, we cannot say that they have presented a claim cognizable under section 1983. As a matter of law, there has been no deprivation of property without due process of law. *Parratt,* 451 U.S. at 537, 543–44, 101 S.Ct. at 1914, 1916–17.

AFFIRMED.