[No. 42890. En Banc. April 4, 1974.]

P. B. LUTZ, *Appellant*, v. THE CITY OF LONGVIEW *et al.*, *Respondents.*

*Weber, Baumgartner & Heller, P.S.,* and *Kenneth W. Weber,* for appellant.

*Studley, Purcell & Spencer* and *Wayne D. Purcell,* for respondents.

BRACHTENBACH, J.—Zoning and rezoning frequently touch off considerable controversy; this case is no exception. The only thing which makes it unusual is that it involves a planned unit development (PUD), a relatively new concept in planning.

Petitioner-appellant appeals from a judgment by the trial court dismissing his writ of review challenging the acts of the respondents in approving a planned unit development. The developers applied to the planning commission of the City of Longview for permission to construct a planned unit development consisting of two separate buildings totaling 28 units upon a tract of land approximately 4½ acres in size. The tract was zoned R-1, classified as a low density single family residential zone. At the time of the developer's application, article 3 of ordinance No. 1334 authorized the improvement of land by the planned unit development

method. By the terms of article 3, the city delegated to the planning commission the authority to approve an application for a PUD in the municipality. The ordinance contains no provision whereby the city council is required to approve or review the decision of the planning commission. After a public hearing by the planning commission, the PUD was approved.

The major issue in this case is whether the city council had the authority to delegate to the planning commission final approval of a planned unit development which thereby affixed the concept to a specific tract.

It is necessary to review the nature of a planned unit development. Traditional zoning has had the virtue of certainty and the handicap of rigidity. A designated zone authorized certain uses, and no others, absent a variance. While a rezone into a more permissive class might accommodate a desirable use, it might also allow an undesirable one. In short, the zoning authority was unable to tailor a specific desirable development to a particular tract of land if it involved uses which might cut across a number of zone classifications—unless the tract were rezoned to accommodate the most liberal element. In contrast, the PUD achieves flexibility by permitting specific modifications of the customary zoning standards as applied to a particular parcel. The developer is not given carte blanche authority to make any use which would be permitted under traditional zoning. D. Mandelker, *The Zoning Dilemma* (1971). Under the Longview ordinance the PUD is not affixed, at the outset, to any particular area. Hence this flexible device is often referred to as a floating zone. It hovers over the entire municipality until subsequent action causes it to embrace an identified area. *See* 1 R. Anderson, *American Law of Zoning* § 5.16 (1968).

■ What is the legal nature and effect of the act of imposing a PUD upon a specific parcel of land? We hold that it is an act of rezoning which must be done by the city council because the council's zoning power comes from the

statute and that is what the statute requires. It is inescapable that application of the PUD to this tract constituted an act of rezoning. Before the PUD was authorized, the tract here was limited to low density single family residences primarily. After authorization of the PUD the permitted use is the erection of two large buildings, one of them 55 feet high, consisting of 28 living units, containing 46,900 square feet. There would be 32 underground parking spaces and 30 on-site spaces. The change in permitted use is obvious.

The authorities are clear that such a change in permitted uses is a rezone or amendment of the zoning ordinance. "The end product is, of course, an amendment to the zoning ordinance which reclassifies the land in question." 2 R. Anderson, *American Law of Zoning* § 8.38, at 19 (1968). In *Sheridan v. Planning Bd. of Stamford,* 159 Conn. 1, 17, 266 A.2d 396 (1969), the court declared that

> [W]hen a zoning board grants an application requesting it to apply a floating zone to a particular property, *it alters the zone boundaries of the area by carving a new zone out of an existing one.*

(Italics ours.) Indeed, substantial changes in the characteristics of the proposed PUD have been held to be an act of rezoning, requiring a second compliance with rezoning procedures, even though the PUD was previously affixed. *Millbrae Ass'n for Residential Survival v. Millbrae,* 262 Cal. App. 2d 222, 69 Cal. Rptr. 251 (1968).

Since the imposition of the floating zone to particular property is an act of rezoning, the issue is where does the power lie to accomplish this legislative act. The answer can only be found in the statute. Thus we must examine the applicable statutes to determine which entity is authorized to rezone.

Turning to RCW 35A.63 we find a clear separation of functions and powers between the planning body and the municipal legislative body, the city council in this case. The planning agency prepares the comprehensive plan, RCW

35A.63.060, but "the final form and content of the comprehensive plan shall be determined by the legislative body." RCW 35A.63.072. All amendments, modifications or alterations to the comprehensive plan are determined in the same fashion. RCW 35A.63.073. Only the legislative body is empowered to adopt a zoning map and ordinance. RCW 35A.63.100. Obviously the state has vested the authority to zone and rezone solely in the city council.

The next step is recognition of the rule that the city council has no inherent power to delegate this legislative authority, *State ex rel. Bowen v. Kruegel*, 67 Wn.2d 673, 409 P.2d 458 (1965), and no such power has been granted by the statute. In fact, RCW 35A.63.120 authorizes only the delegation of *administrative and enforcement responsibilities,* thereby negating delegation of the legislative act of rezoning the property in question. Moreover, if the city's position were valid as to rezoning under a planned unit development, there is no reason why the planning commission could not be authorized to do every act of zoning and rezoning. Any fair reading of the statute indicates that such conclusion is totally contrary to the separation of functions clearly delineated in the statute.

The city's reliance upon *Cheney v. Village 2 at New Hope, Inc.,* 429 Pa. 626, 241 A.2d 81 (1968), is misplaced. There the legislative authority specifically applied the PUD zone to a particular piece of property, the fatal step absent in this case. The thrust of the *Cheney* holding is that the *details* of the PUD may be lodged with the planning agency. We agree that such flexibility is desirable and valid. It is the act of rezoning which must be done by the council. Thereafter, subject to adequate guidelines, the administrative functions of tailoring the specifics of the concept to the particular site already rezoned can be carried out by the planning agency as contemplated and authorized by RCW 35A.63.120.

The petitioner next contends that the action of the planning commission in approving the PUD should be held in-

valid because there were "numerous violations" of section 35-33 and section 35-34 of article 3, and requests the court to examine the exhibits and the record to determine whether the requirements of the ordinance have been met.

 It is not the function of this court to search the record for possible errors, but only to rule as to errors specifically claimed. *Hollingbery v. Dunn*, 68 Wn.2d 75, 411 P.2d 431 (1966). In order for this court to consider assignments of error, the petitioner must set forth in his brief the facts and the arguments which support his contentions on appeal. *State v. Ozanne*, 75 Wn.2d 546, 452 P.2d 745 (1969).

ROA I-43 specifically provides that:

> No alleged error of the superior court will be considered by this court unless the same be definitely pointed out in the "assignments of error" in appellant's brief.

The petitioner contends that "numerous violations" of sections 35-33 and 35-34 were pointed out to the trial court, but has failed to set forth the specific facts and arguments in his brief which support his position.

In his brief petitioner has set forth properly two arguments which specify in some detail the extent to which the developers allegedly failed to comply with the provisions of article 3. The first allegation by the petitioner is that section 35-31(a) limits the number of living units on the tract to 23, and therefore the planning commission did not conform to that provision when it approved the application of the developers for 28 units. Section 35-31(a) provides as follows:

> The average lot size within a Planned Unit Development, exclusive of areas set aside for commercial, industrial, open space and street purposes, shall not be less than the minimum lot size required by other sections of this Chapter. Not more than forty per cent (40%) of the lots in any Planned Unit Development, shall have an area of less than six thousand (6,000) square feet but no lot in such development shall have an area of less than five thousand (5,000) square feet. Not more than ten percent (10%) of the lots in such a development, shall have an area of five thousand (5,000) square feet. The average lot

size shall be determined by dividing the total area designated for residential use by the total number of lots proposed within the Planned Unit Development project.

After studying this section in light of the other provisions in article 3, we agree with the trial court's conclusion that section 35-31 (a) was not specifically tailored for multilevel condominiums of the type in this planned unit development project. The plain language of section 35-31 (a) indicates that there must be residential "lots" involved in order for the requirements of that section to become applicable. Furthermore, the requirements in that section that 60 percent of the "lots" be at least 6,000 square feet in area, no more than 10 percent of the "lots" to be 5,000 square feet in area, and no "lot" in such development to be less than 5,000 square feet in area, could not possibly be applicable in the instant case where family "units" are involved in a multilevel condominium project.

Since a "planned unit development" is defined under section 35-30 (a) of article 3 as "a planned large project, the average density of which shall not be less than the minimum density required by other sections of this chapter," the planning commission was entitled to look to other sections of the Longview city ordinance. The only other section dealing with density requirements which appears to be applicable is section 35-15 (e), upon which the trial court relied in determining that the developers had complied with the provisions in the ordinance. Section 35-15 (e) provides:

Every multi-family dwelling and bungalow court hereafter erected in this district shall provide a site area equivalent to one thousand (1,000) square feet for each family unit in such dwelling or in lieu thereof there shall be maintained upon the same site with the dwelling building a space open and unoccupied, except by trees, shrubs or other natural growth, having an area equivalent to three hundred (300) square feet for each family living unit contained in such multi-family dwelling or bungalow court.

The proposed site of the PUD encompasses a total area of 172,900 square feet upon which two multilevel condominiums, consisting of 28 living units, shall be constructed. Under these facts, the developers have complied with this section of the ordinance substantially beyond its requirements.

The petitioner also argues that the action of the planning commission in approving the PUD should be held invalid because the planning commission failed to follow section 35-31 (b) of article 3. That section provides:

> The Planned Unit method of development shall apply only to undeveloped tracts of land containing an area of at least twenty-five (25) acres of land; provided that the Planning Commission may consider tracts of land having an area of less than twenty-five (25) acres if said tract is separated from adjoining areas on at least three (3) sides by permanent barriers *such as hills,* lakes, rivers, parks, playgrounds *or golf courses.*

(Italics ours.)

Since we are remanding this matter to the Longview City Council, it can determine whether the barrier is sufficient to comply with the ordinance. If it so determines, it is not for us to substitute our judgment.

■ The petitioner next contends that the action of the planning commission constitutes illegal "spot zoning." We find this contention to be without merit on the facts of this case. This court addressed the issue of spot zoning in *Smith v. Skagit County,* 75 Wn.2d 715, 743, 453 P.2d 832 (1969), wherein we stated:

> Spot zoning has come to mean arbitrary and unreasonable zoning action by which a smaller area is singled out of a larger area or district and specially zoned for a use classification totally different from and inconsistent with the classification of surrounding land, and not in accordance with the comprehensive plan. Spot zoning is a zoning for private gain designed to favor or benefit a particular individual or group and not the welfare of the community as a whole. *See* C. Rhyne, *Municipal Law* § 32-3, at 825 (1957). The vice of a spot zone is its inevitable effect of granting a discriminatory benefit to one or a

group of owners and to the detriment of their neighbors or the community without adequate public advantage or justification. *Thomas v. Town of Bedford,* 11 N.Y.2d 428, 184 N.E.2d 285 (1962). Zoning merely for the benefit of one or a few, or for the disadvantage of some and with no substantial relationship to the public health, safety, general welfare or morals, in conflict with either the comprehensive zoning plan or ordinance is arbitrary and capricious and unlawful. *Eckes v. Board of Zoning Appeals of Baltimore Cy.,* 209 Md. 432, 121 A.2d 249 (1956).

Petitioner claims that "spot zoning" is present since the comprehensive plan of the city does not anticipate that planned unit developments will be applied to the neighborhood in question. The petitioner argues that the action taken by the planning commission constitutes "spot zoning" since the approval of the PUD was not "in accordance with the comprehensive plan." We cannot agree.

■ The comprehensive plan makes only one reference to the use of the planned unit development method, where it is cited as one of the items needing "reconsideration and evaluation" in the future when the Longview zoning ordinance is reviewed. A comprehensive plan, however, is not a regulatory measure, but is a "blueprint which suggests various regulatory measures." *State ex rel. Standard Mining & Dev. Co. v. Auburn,* 82 Wn.2d 321, 510 P.2d 647 (1973). We believe the absence of specific guidelines in the comprehensive plan referring to planned unit development did not preclude the city council from enacting article 3 in the exercise of its legislative discretion.

■■ This court recognizes the principle that zoning ordinances are constitutional in principle as a valid exercise of the police power, and will be upheld if there is a substantial relation to the public health, safety, morals, or general welfare. *McNaughton v. Boeing,* 68 Wn.2d 659, 414 P.2d 778 (1966). The enactment of article 3 was a discretionary exercise of police power by the legislative authority of the city and cannot be reviewed by the courts except for manifest abuse of discretion, which is usually characterized as

"arbitrary and capricious conduct." *Buell v. Bremerton*, 80 Wn.2d 518, 495 P.2d 1358 (1972); *Sharninghouse v. Bellingham*, 4 Wn. App. 198, 480 P.2d 233 (1971). After reviewing the arguments by the petitioner, we conclude that the petitioner has not sustained the burden of proving that the city council acted arbitrarily or capriciously in adopting article 3, and we therefore hold that the city council did not engage in spot zoning by passing article 3 to the Longview zoning ordinance.

Since we hold that the council must make final judgment as to whether to approve the planned unit development, we need not consider petitioner's contention that the planning commission acted arbitrarily and capriciously in administering article 3.

In summary, we hold that article 3 of the Longview ordinance validly authorizes a project of the nature involved here, but that final approval must be made by the city council. The approval of the planning commission merely constitutes a recommendation to the council.

The matter is remanded to the superior court for referral to the Longview City Council.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and UTTER, JJ., concur.

Petition for rehearing denied June 28, 1974.